IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBSCRIBING TO POLICY NUMBER LCL002439, SYNDICATE 4444<br><br>Plaintiff,<br><br>v.<br><br>JAGDISH PATEL, d/b/a A & W MOTEL, and ANGELA WILLIAMS<br><br>Defendants. | No. 3:10-cv-00958<br>JUDGE HAYNES |

## MEMORANDUM

Plaintiff, Certain Underwriters at Lloyds London Subscribing to Policy Number LCL002439, Syndicate 4444 (Underwriters), a foreign corporation, filed this action under 28 U.S.C. § 1332, the diversity statute, against Defendants, Jagdish Patel, d/b/a, A & W Motel, and Angela Williams, Tennessee citizens. Plaintiff seeks a declaratory judgment that Plaintiff does not owe a duty to defend or indemnify Defendant Patel in a state court legal action filed by Defendant Williams and that the insurance policy at issue is void due to Defendant Patel's misrepresentations. Defendant Williams's state court action seeks to impose liability upon Defendant Patel in connection with the murder of George Labrent Miller at Defendant Patel's motel. In sum, Plaintiff contends that all claims in Williams's state court action are expressly excluded from coverage by Defendant Patel's insurance policy.

Before the Court is Plaintiff's motion for summary judgment, (Docket Entry No. 13), contending, in essence, that Defendant Patel's insurance policy specifically excludes coverage for claims that arise out of an assault or battery. Plaintiff further argues that all of Defendant Williams' claims arise out of the assault and battery upon George Miller.

In his response, (Docket Entry No. 18), Defendant Patel contends that under Tennessee law, the duty to defend the insured is determined by the specific facts alleged in the underlying complaint and any doubts about the insurer's duty to defend are resolved in the insured's favor. Defendant Patel also argues that the insurance policy is vague and the specific facts of the state court complaint require factual findings to relieve Plaintiff of its duty to defend.

For the reasons set forth below, the Court concludes that Plaintiff's motion for summary judgment should be granted because the allegations and claims in the state action do not state claims that are covered under the Defendant Patel's insurance policy. The claims in the state court action are excluded under the assault and battery exception in Defendant Patel's policy.

## 1. Findings of Fact[1]

Defendant Patel purchased a Commercial General Liability Insurance Policy, policy number LCL002439, from Plaintiff and the policy was in full force and effect from December 5, 2008 until December 5, 2009. (Docket Entry No. 1, Complaint at ¶ 6). The policy covered Defendant Patel for bodily injury and property damage claims up to the policy limit, subject to the terms, conditions, exclusions and endorsements of the policy. Id.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d) on the merits of Plaintiff's motion for summary judgment.

Defendant Angela Williams, next of kin to the deceased George Labrent Miller, filed a legal action against Defendants: Patel, Corey Gilbert and Dominic Hodges in the Circuit Court of Montogmery County, Tennessee. Williams alleges that on or about July 22, 2009, Miller occupied a room in Defendant Patel's motel and was assaulted and shot to death by Gilbert and Hodges. The factual allegations in Williams's state court complaint are as follows:

> 1. On July 22, 2009 at approximately 2:00 a.m. deceased, George Labrent Miller, was in the bed in Room (116 or 117) of the A&W Motel when he was suddenly assaulted and shot to death by assailants later identified as Corey Demorris Gilbert and Dominick Shon Dre Hodges. Deceased in no way provoked the attack by his assailants.
>
> 2. Prior to this attack upon the deceased, the defendant, owner of the A&W, is the owner, operator and manager and charged with the duty of providing security and safety of the A&W Motel guests, or in the exercise of reasonable and ordinary care knew or should have known that characters who were not responsible or would pose a possible danger to guests and or visitors of the A&W Motel had been roaming throughout the motel, lurking about in the parking lot.

(Docket Entry No. 1-2, Williams Complaint at 2).

> The state court complaint contains the following claims against Defendant Patel:
>
> 7. Prior to this attack upon the deceased, the defendant, owner of the A & W, is the owner, operator and manager and charged with the duty of providing the security and safety of the A & W Motel guests, or in the exercise of reasonable and ordinary care knew or should have know that characters who were not responsible or would pose a possible danger to guests and or visitors of the A & W Motel had roaming throughout the motel, lurking about in the parking lot.
>
> 8. Defendant was negligent in failing to take remedial measures to convert dangerous conditions set forth hereinabove. The motel has had at least three prior homicides on the premises prior to this homicide.
>
> 9. Defendant was negligent in failing to fulfill its duty to provide a safe area which must be used by guests in the motel.
>
> 10. As a result of the aforementioned conditions existing due to the negligence of the defendant and the ensuing deadly assault upon the deceased, plaintiff, Angela Williams has suffered a devastating and irreplaceable loss. Her loss stems directly from the failure of the defendant, A & W Motel, to perform it's [sic] duty to maintain proper supervision of the motel's grounds and allowing a dangerous

condition to exist on the premises of the hotel which contributed and by favorable climate was conducive to the commission of the grevious act committed against the deceased, George Labrent Miller, by the defendants, Corey Demorris Gilbert and Dominick Shon Dre Hodges.

Id. at 2, 3.

Defendant Patel requested Plaintiff to provide a defense and indemnification under Plaintiff's insurance policy. (Docket Entry No. 1, Complaint ¶ 11). Plaintiff is currently providing a defense to Defendant Patel under a reservation of rights. Id.

As to whether the insurance policy affords coverage of the Williams's claims, the insurance policy provides, in relevant part:

> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Docket Entry No. 1-1, Insurance Policy at p. 26). The policy contains the following exceptions:

> COMBINATION ENDORSEMENT-1
>
> The endorsement modifies insurance provided under the following:
>
> COMMERICAL GENERAL LIABILTY COVERAGE PART
>
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> 2. EXCLUSION – EXPECTED OR INTENDED INJURY AND ASSAULT OR BATTERY
>
> Exclusion a. of Coverage A (Section I) is deleted and replaced with the following:
>
> **"Bodily injury" or "property damage':**
> (1) expected or intended from the standpoint of any insured;

> **(2) arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery; or**
> (3) arising out of charges or allegations of negligent hiring, training, placement or supervision with respect to (1) or (2) above.
>
> 3. EXCLUSION – PUNITIVE DAMAGES
>
> This insurance does not apply to any claim or indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interests or damages attributable to punitive or exemplary damages.

Id. at 36 (emphasis added).

## 2. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of

material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]…must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, **summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.**
>
> \*    \*    \*
>
> Progressing to the specific issue in this case, we are convinced that **the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits**. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, **the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented**. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

7

could reasonably find for the plaintiff. **The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it. Upon whom the onus of proof is imposed.'**

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added). It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

8

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment

9

under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

In this diversity action, the Court applies the substantive law of the forum state, including the forum's choice of law rules. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The insurance policy here has "issued and delivered as surplus line coverage pursuant to the Tennessee insurance statutes." (Docket Entry No. 1-1, Policy at p. 2). In the absence an explicit choice-of-law provision in the policy, Tennessee law applies here where the insurance policy was issued and delivered in Tennessee. Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998).

As a general rule, Tennessee law construes any ambiguities in an insurance policy in favor of the insured. Griffin v. Shelter Mut. Ins. Co., 18 S.W.3d 195, 200 (Tenn. 2000). Yet, if the terms of the policy are clear, the Court enforces insurance contracts "according to their plain terms" with the language construed in its "plain, ordinary and popular sense." Id. In a word, Tennessee courts do not create a new insurance contract for the parties. Id.

An insurer's duty to defend is separate and distinct from the insurer's obligation to pay claims under the policy. Drexel Chem. Co. v. Bituminous Ins. Co., 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). The duty to defend is broader than the duty to indemnify. Id. "In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than on the facts as they actually are. . . ." St. Paul Fire and Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994) (citation omitted). The "[insured] has the burden of proving that its damages are covered by the terms of the policy; the [insurer] in turn, must establish the applicability of any exclusions on which it relies." Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006).

Under Tennessee law, the Court's inquiry is confined to the allegations in the complaint in the action:

> If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy. An insurer may not properly refuse to defend an action against its insured unless "it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage."

Drexel Chem. Co., 933 S.W.2d at 480 (citations omitted).

In analyzing these coverage claims, Tennessee courts consider the gravamen of the factual allegations and claims in the underlying action.

> "It would be inappropriate for us to conduct a word-by-word analysis of the complaint, patching one word from one paragraph to another word from another paragraph, because such a review might very well cause us to find meaning where none otherwise existed. The proper extent of our review simply requires us to focus attention on the facts alleged as they appear in the complaint to determine if they could even potentially be covered by the [insurer]."

Insura Property and Cas. Ins. Co. v. Ashe, No. M2002-00374-COA-R3-CV, 2003 WL 253255, at *4 (6th Cir. Feb. 6, 2003) (citation omitted).

Here, Plaintiff's policy clearly excludes personal and property damages "arising out of an assault and battery" or "any omissions in connection with an assault and battery." Defendant Patel's argument is that this language is ambiguous, but the Court deems this language to be comprehensive so as to exclude any claims related to these intentional torts.

Defendant Patel next contends that Williams's complaint asserts claims of negligence, not assault and battery. Id. at p. 6. Defendant Patel argues the Court should apply a concurrent cause theory of causation rather than the "arising out of" or "but-for" theory of causation embodied in the policy. See Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 886-88 (Tenn. 1991); Planet Rock, Inc., v. Regis Insurance Company, 6 S.W.3d 484, 491-93 (Tenn. Ct. App. 1999). Under the concurrent theory of causation "[c]overage cannot be defeated simply because a

11

separate excluded risk constitutes an additional cause of the injury." Planet Rock, 6 S.W.3d at 492 (quoting State Farm Mutual Auto Ins. Co. v. Partridge, 514 P.2d 123, 130-31 (Cal. 1973)). Thus, under this theory, an insurer is required to honor a policy "under the 'concurrent causation doctrine' that provides that coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury." Id.

The Tennessee Court of Appeals considered this concurrent causation theory on an insurer's contention that an assault and battery exemption in the commercial general liability insurance policy excluded a nightclub's claim for a defense and indemnification for claims following a fatal shooting. St. Paul Reinsurace Co. Ltd. v. Williams, No. W2003-00473-COA-R3-CV, 2004 WL 1908808 (Tenn. Ct. App. 2004). The insured argued that the failure to maintain a safe premise was a concurrent cause of injury following the fatal attack, but the Tennessee Court of Appeals disagreed:

> In the instant case, Appellant contends that the claim against Pure Passion-negligence in failing to provide security and a safe and secure premise-is a concurrent cause which is not excluded by the insurance policy. Relying on Watts and Planet Rock, Appellant argues that this Court should reverse the grant of summary judgment to the Appellee. We disagree. Unlike Watts and Planet Rock, this case involves a claim which is excluded by the insurance policy. In Watts, the nonexcluded causes were the placement of the pan of flammable substance, Crafton's failure to warn Watts of the presence of the flammable substance, and Crafton's negligence in dropping and kicking the burning substance. Watts, 811 S.W. 2d at 888. In Planet Rock, the nonexcluded cause was the insured's failure to render or make available the appropriate medical care. Planet Rock, 6 S.W.3d at 489, 493. However, in this case, **the claim alleged by Appellant against Pure Passion is excluded by the language of the assault and battery exclusion in the insurance policy. Such policy excludes from coverage claims arising out of "[a]ssault and [b]attery, whether caused by or at the instructions of, or at the direction of** *or negligence of the insured, his employees,* **patrons or any causes whatsoever...In this case, the Appellant's claim falls within the exclusions articulated in the insurance policy, and, therefore, the "concurrent causation doctrine" should not apply to Appellant's claim. For this reason, we affirm the grant of summary judgment in favor of Appellee."**

2004 WL 1908808, at * 4. (italics in original and emphasis added).

The policy at issue here lacks an explicit exclusion of a "negligence" claim arising out of an assault or battery, but the policy's language excludes any claims "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery.[2]" This language would include any negligence claim in Defendant Williams's state court action for Defendant Patel's alleged failure or omission to take necessary steps to make the premises safe where such omission caused the fatal assault on George Miller.

For the reasons stated above, the Court concludes that the Plaintiff's motion for summary judgment should be granted.

An appropriate order is filed herewith.

Entered this the 3rd day of June, 2011.

WILLIAM J. HAYNES, Jr.
United States District Judge

---

[2] The first definition provided in Black's Law Dictionary for 'omission' is "a failure to do something; esp., a neglect of duty." Black's Law Dictionary 1116 (7th ed. 1999).

13